IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARILYN A. SHELTON, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL NO. 04-963-PMF |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND OPINION

**FRAZIER, Magistrate Judge:**

Plaintiff, Marilyn A. Shelton, seeks judicial review of a final decision of the Commissioner of Social Security denying her August, 2000, application for disability benefits. The application was denied following an administrative determination that Ms. Shelton was not disabled. That decision became final when the Appeals Council declined to review a decision reached by an Administrative Law Judge (ALJ). Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g).

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has

a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

The ALJ evaluated plaintiff's disability claim through Step 5 of the sequential analysis.[1] The ALJ concluded that plaintiff's serious medical conditions significantly interfered with her ability to perform basic work activities but did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that despite her impairments, plaintiff retained the ability to lift 10 pounds, sit for a total of 6 hours in an 8-hour workday, and stand for 2 hours in an 8-hour workday. The ALJ decided that plaintiff was not disabled after consulting Medical-Vocational Rule 201.15 (R. 13-20).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law,

---

[1] The ALJ also considered plaintiff's claims for widow's insurance benefits and supplemental security income. Those decisions are not mentioned in plaintiff's brief and have not been reviewed.

and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.      Evaluation of Certain Evidence

Plaintiff argues that the Commissioner's final decision should be reversed or remanded for further proceedings because the ALJ did not properly evaluate findings reported by a physical therapist in a January, 2001, functional capacity evaluation summary. Specifically, plaintiff argues that a physical therapist's comments describing "at least some degree of symptom magnification" did not reveal intent to magnify symptoms. She also notes that the evaluation did not reflect her ability to tolerate pain or medication side-effects or her capacity for full time, ongoing work (Doc. No. 9, pp. 3-4). Defendant argues that the ALJ's functional capacity assessment is supported by substantial evidence.

On January 30, 2001, plaintiff was evaluated to determine whether she could perform her pre-injury job and if not, the extent of her physical abilities. During the clinical testing, plaintiff demonstrated sporadic physical inconsistencies, suggesting variable levels of effort. The evaluator felt that plaintiff could do more physically than was demonstrated and the overall test findings also suggested at least some degree of symptom magnification (R. 170-198). In summarizing these findings, a physical therapist explained that she was "by no means implying intent" (R. 170).

On February 8, 2001, Dr. Juergens recommended a work conditioning program with aquatic therapy for one month, hoping to increase plaintiff's work tolerance so that she could return to her previous job (R. 165). At the first session, it was noted that plaintiff's effort level and symptoms appeared to be magnified and overt pain changes seemed to be exaggerated (R. 217). Dr. Gordon contacted Scott D. Peterson, a physician's assistant, and Dr. Juergens. They agreed that they might

be seeing some symptom magnification (R. 164).

The ALJ considered the evidence of symptom magnification when considering the credibility of plaintiff's complaints of severe pain (R. 15).

Although plaintiff's argument is not supported by a discussion of authority, the Court believes she challenges the weight assigned to evidence that she may have magnified her symptoms. As noted above, judicial review of the Commissioner's final decision does not involve re-weighing evidence.

Plaintiff may also be challenging the ALJ's functional capacity assessment. If so, the Court agrees with the defendant that this aspect of the ALJ's decision is supported by substantial evidence.

Residual functional capacity is an assessment of the most a person can do despite limitations caused by medically determinable physical and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ based the residual functional capacity assessment on credible objective medical evidence and medical opinion evidence, which reasonable minds might accept as adequate to support the conclusion that plaintiff retains the physical ability to lift items weighing 10 pounds, sit for a total of 6 hours in an 8-hour workday, and stand for 2 hours in an 8-hour workday (R. 16-18, 331-338, 359). 20 C.F.R. § 404.1527(f)(2)(i).

Plaintiff may also be challenging the ALJ's credibility assessment. If so, the Court defers to the ALJ's assessment, which was based on factors that rationally detract from plaintiff's reliability as a witness, namely, reports suggesting that she overstated, exaggerated, and/or magnified her symptoms and described symptoms that are not supported by objective evidence of mechanical back pain due to mild degenerative disc disease. The ALJ's credibility assessment was not "patently wrong." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993); *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.) *cert. denied*, 479 U.S. 988 (1986).

II. **Evaluation of Limitations Due to Pain**

Plaintiff also argues that the ALJ did not employ a logical evaluation of evidence describing the effect of pain on her ability to function in the workplace. Specifically, plaintiff claims that the ALJ failed to properly discuss her efforts to relieve symptoms with medication. Defendant responds that the ALJ considered evidence reflecting rather conservative treatment and care, including testimony describing medication side effects.

Plaintiff was injured when she lifted a desk in November, 1998. Several days later, she obtained medical attention for symptoms of low back pain. In May, 1999, an MRI of plaintiff's lumbar spine showed mild degenerative disc disease at the L3-4 and L4-5 levels without evidence of a herniated or extruded disc (R. 117, 119). Plaintiff used pain medication and continued to work – despite her spinal impairment – until March, 2000 (R. 61, 214, 295). That month, she sought treatment at a hospital emergency room, where she received pain medication and muscle relaxants. Magnetic resonance films obtained in March, 2000, were considered to be normal(R. 117, 135, 298).

Plaintiff subsequently sought treatment to manage her pain. She took medication and participated in group therapy (R. 297). She underwent nerve conduction studies, which were well within the normal range (R. 134). In June and July, 2000, she underwent additional diagnostic testing, resulting in a diagnosis of mechanical low back pain and degenerative disc disease[2] (R. 137-138). In August and September, 2000, she underwent electrical stimulation (R. 142-145, 340-42). In October, 2000, plaintiff declined rhizotomy, opting for more conservative treatment (R. 141).

In the early part of 2001, plaintiff attempted orientation to work hardening without success. As noted above, the therapist formed the impression that plaintiff appeared to magnify her symptoms

---

[2] While a possible annular fissure was observed during a provocative discography, plaintiff's surgeon did not diagnose an annular tear.

and effort level (R. 217). Plaintiff participated in a trial physical therapy program designed to reduce pain levels and improve mobility through myofascial release and light massage. While she did not show much improvement, she became more tolerant to touch and was able to stand with a more erect posture (R. 206-213).

In July, 2001, plaintiff was advised to treat her muscle pain with ice and heat. Her pain medication was decreased and later changed to a transdermal patch (R. 218, 347, 346). In August, 2001, plaintiff reported significant improvement without significant medication side effects (R. 345). In December, 2001, plaintiff's medications were adjusted after she took someone else's medicine (R. 343).

In 2002, plaintiff's symptoms were treated with medication (R. 358).

In February, 2003, plaintiff's pain medication was increased (R. 357). Approximately one week later, an MRI of plaintiff's lumbar spine showed mild degenerative disc disease at the L3-5 and L4-5 levels without evidence of a herniated disc (R. 359). In March, 2003, Dr. Fasnacht indicated that plaintiff achieved moderate improvement with pain management treatment (R. 365). In September, 2003, plaintiff's nerve medication was increased (R. 367).

In January, 2004, Dr. Fasnacht described plaintiff's pain as moderately severe and continuous with exacerbations. He said plaintiff had reported drowsiness "at times" and nausea as medication side effects (R. 376).

Plaintiff provided a list of medications prior to the hearing and testified that she experienced side effects of drowsiness and forgetfulness. She reported sleeping during the day, due in part to her medications (R. 378, 451-453).

When the ALJ summarized plaintiff's testimony, he mentioned plaintiff's pain medications and her comments regarding medication side effects (R. 17). The ALJ determined that plaintiff's

impairments caused some pain and exertional limitation but not to the extent indicated in plaintiff's testimony, which was not totally credible (R. 18-19).

Plaintiff argues that the ALJ failed to build a logical bridge linking her statements regarding medication side effects to his conclusion that she retained a limited ability to sit, stand, and walk. When ALJs evaluate subjective complaints that are not supported by objective medical evidence, they consider a number of factors and decide whether pain is a significant factor in the claimant's alleged inability to work. The type, dosage, effectiveness, and side effects of medication taken to alleviate pain is one factor considered. 20 C.F.R. § 404.1529(c)(3). ALJs must build a bridge of logic connecting the evidence to the conclusions that support that decision. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

The ALJ complied with the applicable legal standard. He evaluated the nature and extent of plaintiff's low back pain and in doing so, considered relevant information, including information regarding the type, dosage, effectiveness, and side effects of plaintiff's medication. Furthermore, the ALJ's assessment of the extent to which pain caused limitations flows logically from the finding that plaintiff's testimony regarding her limitations was not entirely credible. The Court finds no legal error in the ALJ's pain analysis.

### III. Characterization of Evidence

Plaintiff also argues that the ALJ mischaracterized evidence when he summarized plaintiff's testimony. Defendant argues that the ALJ acknowledged plaintiff's testimony, rationally discredited her pain complaints, and rationally restricted her to a range of sedentary work.

At the hearing, plaintiff described her daily activities, explaining that she typically took daytime naps, which she attributed – in part – to medication side-effects (R. 451-452). When the ALJ

evaluated plaintiff's statements regarding medication side effects, he said that she "did not indicate that said alleged side effects limited her activities" (R. 17).

A person who is sleepy or sleeping during the day is limited in his or her ability to function in the workplace (R. 475). However, the record does not contain substantial, credible evidence linking side effects from plaintiff's medications to her regular activity of taking day-time naps. While drowsiness is a potential side effect for some the medicine plaintiff routinely used, the medical professionals who monitored her response to treatment did not note significant adverse effects from medication (R. 345, 376). Because the ALJ discredited plaintiff's assessment of her limitations – in part because they were not consistent with objective medical evidence – any error is harmless. The Court declines the invitation to remand in an effort to obtain a perfect decision. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)(no principle of administrative law or common sense requires remand in quest of the perfect opinion absent a reason to believe that remand might lead to a different result).

### IV. Conclusion

The Commissioner's final decision denying Marilyn A. Shelton's August, 2000, and January, 2003, applications for disability benefits, widow's insurance benefits, and supplemental security income is AFFIRMED.

SO ORDERED:  July 18, 2006  .

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**